IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 2689 |
| | ) | |
| COOK COUNTY, ILLINOIS, | ) | |
| STATE OF ILLINOIS, | ) | |
| EARL DUNLAP, and | ) | |
| OFFICE OF THE CHIEF JUDGE OF THE | ) | |
| CIRCUIT COURT OF COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Demetria Brown ("Brown"), a former employee of the Cook County Juvenile Temporary Detention Center ("JTDC"), has filed an eight-count Second Amended Complaint seeking injunctive relief and damages for an alleged interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*, and for related unlawful retaliation. (Dkt. No. 36 ("2d Am. Compl.").) Unsure of the appropriate defendant, as explained below, Brown has brought her claims against Cook County (Counts I and II), the State of Illinois (Counts III and IV), the JTDC's Transitional Administrator, Earl Dunlap, (Counts V and VI), and the Office of the Chief Judge of the Circuit Court of Cook County (Counts VII and VIII).

On October 2, 2012, the Transitional Administrator of the JTDC, Earl Dunlap ("Dunlap"), filed his Answer to Brown's Second Amended Complaint. (Dkt. No. 69.) The State of Illinois has not yet filed an appearance in this lawsuit. Pending before the court is

1

"Defendants Cook County and Office of the Chief Judge's Renewed Motion to Dismiss Plaintiff's Second Amended Complaint." (Dkt. No. 71.) For the reasons set forth below, Cook County and the Office of the Chief Judge's motion is granted. Counts I, II, VII, and VIII are dismissed with prejudice, and Cook County and the Office of the Chief Judge of the Circuit Court of Cook County are dismissed as defendants in this lawsuit.

BACKGROUND

At this stage of the litigation, the court accepts as true the factual allegations set forth in Brown's Second Amended Complaint. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). Brown's basic allegations of wrongdoing are simple and relatively straightforward in this case.

Brown began her employment with the JTDC on November 10, 2008, where she served as Business Manager. (2d Am. Compl. ¶¶ 7-8.) Dunlap, who was appointed to the position of Transitional Administrator in 2007, was Brown's supervisor. (2d Am. Compl. ¶ 9; *see also* 09 C 3945, Dkt. No. 330 ("Appointment Order").)

On December 8, 2009, during a regularly scheduled meeting with Dunlap, Brown informed Dunlap that she needed to take FMLA leave. (2d Am. Compl. ¶ 9.) Brown was under a physician's care for a serious health condition, and she also needed to care for her minor son who was likewise under a physician's care for a serious health condition. (*Id.* ¶ 13.) The next day, on December 9, 2009, Dunlap informed Brown that, based upon their conversation during the meeting on December 8, 2009, Brown was being terminated. (*Id.* ¶ 10.) Brown was then handed a letter backdated to December 7, 2009, terminating her employment at the JTDC. (*Id.*)

LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

ANALYSIS

Under the FMLA, eligible employees are entitled to twelve weeks of leave per year "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee" or "to care for . . . a son, daughter, or parent [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C) and (D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). Section 2617(a) of the FMLA provides for a private right of enforcement against employers who violate § 2615. *Moldenhauer v. Tazewell-Pekin Consol. Commc'n Cntr.*, 536 F.3d 640, 643 (7th Cir. 2008). The Seventh Circuit has also construed the FMLA to include a cause of action for retaliation. *Nicholson v. Pulte Homes Corp.*, 690 F.3d

819, 825 (7th Cir. 2012) (citing 29 U.S.C. § 2615(a)(2) and (b)).

Cook County and the Office of the Chief Judge of the Circuit Court of Cook County argue that neither entity can be liable under the FMLA, because they were not Brown's employer and because Dunlap did not act as their agent when he terminated Brown's employment.

The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4). Additionally, regulations issued by the United States Department of Labor explicitly contemplate that "two or more businesses . . . may be joint employers under the FMLA." 29 C.F.R. § 825.106(a).

The parties vigorously contest whether Cook County and the Office of the Transitional Administrator should be considered Brown's joint employers for purposes of FMLA liability. This argument generally misses the mark, as explained below. More important in this case is the fact that no Cook County[1] employee is alleged to have taken any employment action with respect

---

[1] The court takes judicial notice of Dunlap's mandate "to prepare the JTDC for the transition of administrative authority over its operations to the Office of the Chief Judge of the Circuit Court of Cook County" and the provision granting Dunlap the authority to "transfer administrative and operational authority of [certain JTDC functions] to the Chief Judge" with the Chief Judge's prior approval, "if [Dunlap] determines that any function of the JTDC can be transitioned to the Chief Judge and administered in accordance with the terms of [certain relevant court orders]." (Appointment Order at ¶¶ 1, 11.b.ii.) As of the date of this order, Dunlap has not transferred any administrative or operational authority over the JTDC to the Office of the Chief Judge of the Circuit Court of Cook County. *See Doe v. Cook County* (N.D. Ill. Case No. 99-3945) (Dkt. No. 680 ("Fourth Report") ¶ II.B ("On November 20, 2012, the TA and his leadership team made a day-long presentation to the OCJ to begin the process of formally educating the OCJ as to how the JTDC operates.").) Because the Office of the Chief Judge of the Circuit Court of Cook County has *never* had administrative authority over JTDC

to Brown's FMLA leave.

The parties both rely on the case of *Moldenhauer v. Tazewell-Pekin Consol. Commc'n Cntr.*, 536 F.3d 640, 643 (7th Cir. 2008), to support their respective positions. In *Moldenhauer*, the plaintiff employee (Moldenhauer) brought FMLA claims against three defendants (Tazcom, the City of Pekin, and Tazewell County), alleging the defendants were joint employers that "together retaliated against her for attempting to exercise her rights under the FMLA." *Moldenhauer*, 536 F.3d at 641. In an opinion authored by Circuit Judge Ilana Diamond Rovner, the Seventh Circuit held generally that "for a joint-employer relationship to exist [under the FMLA], each alleged employer must exercise control over the working conditions of the employee." *Id.* at 644. The court went on to emphasize that "the ultimate determination will vary depending on the specific facts of each case." *Id.* The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendants, after finding that the City of Pekin and Tazewell County did not "perform[ ] the functions of an employer" in general ("Noticeably Moldenhauer cannot point to one instance of either Pekin or Tazewell hiring a Tazcom employee, determining the working conditions of the dispatchers (such as by specifying the number of dispatchers working at any given time and thus affecting the workload of each dispatcher), or deciding the compensation for a Tazcom dispatcher.") or "exercise[ ] any control over Moldenhauer's employment" specifically, and thus did not qualify as Moldenhauer's joint employers. *Id.* at 645.

---

employees and none of its employees are alleged to have had any relevant interactions with Brown, the court finds it is not a proper defendant in this lawsuit.

Cook County understandably relies on *Moldenhauer* in arguing that it cannot be considered a joint employer for purposes of FMLA liability. The court need not decide this fact-specific question, however, because the allegations of the Second Amended Complaint fail to state a plausible FMLA claim against Cook County even if it is considered a joint employer.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). The Department of Labor regulations require both the "primary employer" and the "secondary employer" to comply with the FMLA's "prohibited acts provisions." 29 C.F.R. § 825.106(e); *see also Grace v. USCAR*, 521 F.3d 655, 667 (6th Cir. 2008) ("[W]hen an eligible employee takes leave, the regulations ensure that *both* the primary and secondary employer honor the decision and do not engage in retributory action.") (emphasis in original). Nowhere in the statue or regulations, however, is it suggested that one employer can or should be held liable for the other employer's adverse employment actions solely because of their joint employer relationship. The parties have cited no cases supporting this result, and this court declines to hold that joint employers are necessarily or always liable for each other's adverse employment actions. In other words, even if there is a joint employer relationship, each of the defendant employers must have its own relevant contacts with the plaintiff employee for purposes of FMLA liability.[2]

Brown relies on *Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008), to support her argument

---

[2] The court also assumes, without deciding, that general principles of agency law could act to make one employer liable for the other employer's adverse employment actions. In this case, however, Dunlap is explicitly an agent of the federal court and not Cook County. (*See* Appointment Order ¶ 2.)

that Cook County is potentially liable for her alleged FMLA violations. In *Grace*, the plaintiff employee (Grace) alleged that both the defendant temporary staffing agency (Bartech) and the defendant business client served by the temporary staffing agency (USCAR) failed to reinstate her at the end of her FMLA leave. *Id.* at 667-68. In its analysis of the joint employer relationship, the Sixth Circuit, in an opinion authored by Circuit Judge Gilbert S. Merritt, Jr., noted that both defendants "exercise[d] considerable control over Grace" with respect to "the ability to hire and fire." *Id.* at 668 ("USCAR's decision to restructure its IT department, for example, helped lead to her termination. However, Bartech alone has the ultimate ability to hire and fire Grace."). The Sixth Circuit ultimately reversed the district court's grant of summary judgment in favor of the defendant employers, finding there to be a genuine issue of material fact regarding the defendants' proffered reason for Grace's termination. *Id.* at 670-71. *Grace* does not stand for the proposition that one joint employer is responsible for another joint employer's violations of the FMLA; rather, each of the defendant employers in *Grace* was alleged to have taken its own actions in failing to return Grace to her pre-leave position.

Brown also relies on the case of *Mahoney v. Nokia*, 444 F. Supp. 2d 1246 (M.D. Fla. 2006), in her response to the pending motion. In *Mahoney*, District Judge Gregory A. Presnell first noted that the defendant business client (Nokia) conceded the existence of a joint employment relationship with the defendant temporary staffing agency (Spherion) with respect to the plaintiff employee (Mahoney). *Id.* at 1254. Judge Presnell next weighed the various factors set forth in the Department of Labor regulations to determine that Nokia was Mahoney's "secondary employer" while Spherion was the "primary employer" for purposes of FMLA liability. *Id.* at 1254-56 (citing 29 C.F.R. § 825.106). Characterizing Mahoney's claim against

7

Nokia as a "fail[ure] to accommodate" Mahoney's FMLA request, Judge Presnell concluded that "only the primary employer is responsible for . . . providing FMLA leave," and that Nokia's failure to accommodate Mahoney's FMLA request did not, as a matter of law, constitute interference with his FMLA rights. *Id.* at 1258. *Mahoney* does not establish that one joint employer is responsible for another joint employer's violations of the FMLA.

This case is factually and legally similar to *Kronk v. Carroll County*, No. L-11-0277, 2012 WL 245059 (D. Md. Jan. 25, 2012) (Legg, J.), a case involving FMLA claims brought by the plaintiff employee (Kronk) against both a county detention facility (Carroll County) and the state officer responsible for day-to-day management of the detention facility (Sheriff Tregoning). As in this case, the county defendant was responsible for financing the detention center's operations and for administering employee benefits and compensation. *Id.* at *1. Sheriff Tregoning, however, was responsible for "[d]ay-to-day management of the facility" and was "the final authority on all of the relevant decisions" regarding the termination of Kronk's employment. *Id.* at *1, 4. District Judge Benson Everett Legg began his analysis by noting "[t]hough the case is factually straightforward, the muddled relationship between the Sheriff and the County, as well as the intricacies of FMLA . . . law, make this analysis a tortuous trip down the rabbit hole." *Id.* at *3. Ultimately, Judge Legg determined "[t]he Court need not decide whether the County may properly be considered Kronk's 'employer' as that term is defined in . . . the FMLA. Rather, the Court concludes that, even if the County is Kronk's employer for some purposes, it is nevertheless the improper defendant in this case because each of the allegedly discriminatory or retaliatory actions cited in Kronk's Complaint was taken by the Sheriff or his personnel, rather than by the County." *Id.* at *4. This court reaches the same conclusion with

8

respect to Cook County's role in Brown's termination.

This court has previously taken judicial notice of Dunlap's Appointment Order and various additional court orders entered in *Doe v. Cook County* (N.D. Ill. Case No. 99-3945) for purposes of assessing Cook County's potential liability for Dunlap's actions as Transitional Administrator. *See Brass v. Cook County*, No. 09 C 6873, 2011 WL 124251 (N.D. Ill. Jan. 14, 2011) (Holderman, C.J.) (addressing claims of discrimination and retaliation in violation of Title VII and § 1983); *Coleman v. Cook County*, No. 10 C 2388, 2011 WL 2647891 (N.D. Ill. June 22, 2011) (Holderman, C.J.) (addressing claims of political retaliation in violation of § 1983 and the "*Shakman* Decree"). As this court has noted, "Dunlap had final policymaking authority over employment decisions at the JTDC, as he was specifically empowered 'to establish personnel policies; to create abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the JTDC.'" *Brass*, 2011 WL 124251 at *3 (quoting Appointment Order ¶ 6.c.). This court further noted that "Dunlap has been expressly made an agent of the federal court, authorized through a federal court order to implement and enforce other federal court orders." *Id.* at *5 (citing Appointment Order ¶ 2). In other words, "[o]nce Cook County agreed to Dunlap's appointment, it lost any ability to oversee or control his actions." *Id.* at *4.

Because Cook County had no authority to grant or deny Brown's request for FMLA leave, or to override Dunlap's decision to terminate Brown, it cannot be held liable for Dunlap's alleged violations of the FMLA in this case.

As this court has previously noted, it "has made a concerted effort to carefully assess the rights and responsibilities of all parties affected by Dunlap's 2007 appointment." *Brass v. Cook*

9

*County* (N.D. Ill. Case No. 09 C 6873) (Dkt. No. 100 at 2 (citing *Doe v. Cook County* (N.D. Ill. Case No. 99-3945) and *Coleman v. Cook County* (N.D. Ill. Case No. 10 C 2388))). In the interest of treading carefully through murky legal waters, the court expresses no opinion on Cook County's potential obligation to indemnify defendant Dunlap in this case, as this issue has not been properly presented to the court for resolution at this time.

## CONCLUSION

For the reasons set forth above, "Defendants Cook County and Office of the Chief Judge's Renewed Motion to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 71) is granted. Counts I, II, VII, and VIII are dismissed with prejudice, and Cook County and the Office of the Chief Judge of the Circuit Court of Cook County are dismissed as defendants in this lawsuit. Plaintiff is directed to file an amended complaint consistent with this court's rulings on or before 12/14/12. Counsel for the remaining parties are requested to meet and confer in accordance with Rule 26(f) and jointly file a revised Form 52, as appropriate, on or before 12/18/12. Status hearing set for 12/20/12 at 9:00 a.m. for purposes of entering a scheduling order. The parties are encouraged to discuss settlement.

                ENTER:

                *James F. Holderman*
                JAMES F. HOLDERMAN
                Chief Judge, United States District Court

Date: December 6, 2012